182 P.3d 426 (2008)
STATE of Washington, Respondent,
v.
Gary Nathaniel GATEWOOD, Sr., Petitioner.
No. 79992-0.
Supreme Court of Washington, En Banc.
Argued March 13, 2008.
Decided May 1, 2008.
James Morrissey Whisman, King County Prosecutor's Office, Christine Wilson Keating, *427 Prosecuting Atty. King County, King Co. Pros/App Unit Supervisor, Seattle, WA, for Respondent.
Susan F. Wilk, Washington Appellate Project, Seattle, WA, for Petitioner.
J.M. JOHNSON, J.
¶ 1 This case requires us to determine the legality of police officers' warrantless seizure of Gary Gatewood. The trial court found that the seizure was supported by reasonable suspicion that criminal activity was afoot. The Court of Appeals affirmed. We granted review and now reverse.

FACTS AND PROCEDURAL HISTORY
¶ 2 The facts are undisputed. Shortly after midnight on June 26, 2004, police officers Larry Longley and Edward Chan were patrolling the Rainier Valley area of Seattle. Chan was driving a marked patrol car, and Longley was riding in the passenger seat. As they drove north on Rainier Avenue South, Longley saw three or four people, including Gary Gatewood, sitting in a bus shelter. Gatewood looked at Longley and the police cruiser, and Longley testified that Gatewood's "eyes got big . . . like he was surprised to see us." 1 Report of Proceedings (RP) (July 7, 2005) at 7. Longley then observed Gatewood "twist[] his whole body to the left, inside the bus shelter, as though he was trying to hide something." Id.
¶ 3 Longley told Chan he thought Gatewood was hiding something and that he wanted to circle back and investigate. Chan turned right at the next intersection, turned right again, and then drove the wrong way down a one-way street returning to the intersection near the bus shelter.
¶ 4 By the time the officers reached the intersection, Gatewood had left the bus shelter and was walking north on Rainier Avenue. Gatewood then jaywalked[1] across Rainier and began walking south on the other side of the street. He turned right onto 39th Avenue and continued walking. Chan drove slowly behind Gatewood and then pulled the police car in front of him blocking his path. Longley jumped out of the car and said to Gatewood, "Stop. I want to talk to you." 1 RP (July 7, 2005) at 21. Gatewood turned around and walked away. Longley ordered him to stop several times, but Gatewood kept walking.
¶ 5 When Gatewood reached some bushes, he bent over and reached into his waistband. The officers could not see what he was doing, so they drew their guns and ordered Gatewood to stop and show his hands. Gatewood pulled something out of his waistband, threw it into the bushes, and then complied with the officers' request. Chan immediately handcuffed Gatewood, and Longley recovered a loaded .22 caliber handgun in the bushes. The officers found marijuana on Gatewood, and a subsequent search of the bus shelter yielded cocaine.
¶ 6 The State charged Gatewood with second degree unlawful possession of a firearm,[2] possession of cocaine, and possession of less than 40 grams of marijuana. At a CrR 3.6 hearing, Gatewood moved to suppress the evidence, claiming the officers did not have reasonable, articulable suspicion of criminal activity justifying the seizure.[3] The trial court denied his motion. A jury found Gatewood guilty of unlawful possession of a firearm and unlawful possession of marijuana. The Court of Appeals affirmed Gatewood's convictions. State v. Gatewood, noted at 137 Wash.App. 1010, 2007 WL 442208 (2007).

STANDARD OF REVIEW
¶ 7 We review a trial court's findings of fact for substantial evidence. State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994). We review conclusions of law de novo. State v. Armenta, 134 Wash.2d 1, 9, 948 P.2d 1280 (1997). The constitutionality *428 of a warrantless stop is a question of law we review de novo. State v. Rankin, 151 Wash.2d 689, 694, 92 P.3d 202 (2004).

ANALYSIS
¶ 8 Article I, section 7 of the Washington Constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." It is well established that that "our Washington State Constitution affords individuals greater protections against warrantless searches than does the Fourth Amendment." State v. Stroud, 106 Wash.2d 144, 148, 720 P.2d 436 (1986).
¶ 9 Generally, warrantless searches and seizures are unconstitutional. State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999). There are, however, "`a few jealously and carefully drawn exceptions . . . which provide for those cases where the societal costs of obtaining a warrant . . . outweigh the reasons for prior recourse to a neutral magistrate.'" Id. (alterations in original) (internal quotation marks omitted) (quoting State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996)). A Terry[4] investigative stop is one such exception. Id.
¶ 10 "Terry requires a reasonable, articulable suspicion, based on specific, objective facts, that the person seized has committed or is about to commit a crime." State v. Duncan, 146 Wash.2d 166, 172, 43 P.3d 513 (2002) (citing Terry, 392 U.S. at 21, 88 S.Ct. 1868). The officers' actions must be justified at their inception. Ladson, 138 Wash.2d at 350, 979 P.2d 833 (citing Terry, 392 U.S. at 20, 88 S.Ct. 1868).
¶ 11 The State concedes that when Longley said "`Stop, I need to talk to you,'" it was a seizure. Resp't's Br. at 13 n. 7 (citing State v. Friederick, 34 Wash.App. 537, 541, 663 P.2d 122 (1983)); see State v. O'Neill, 148 Wash.2d 564, 577, 62 P.3d 489 (2003) (holding that commanding a person to stop is a seizure). Thus, we only need to analyze the facts known to the officers up to this point: (1) Gatewood's widened eyes upon seeing the patrol car, (2) his twist to the left like he was trying to hide something, (3) his departure from the bus shelter, and (4) his crossing the street mid-block.
¶ 12 These facts are insufficient for a Terry stop. Startled reactions to seeing the police do not amount to reasonable suspicion. State v. Henry, 80 Wash.App. 544, 552, 910 P.2d 1290 (1995) (nervousness is not sufficient for Terry stop). Although Gatewood twisted to the side, Longley did not see what, if anything, Gatewood was hiding. Flight from police officers may be considered along with other factors in determining whether officers had a reasonable suspicion of criminal activity, State v. Little, 116 Wash.2d 488, 496, 806 P.2d 749 (1991), but Gatewood did not flee from the police. Chan said he was unsure whether Gatewood saw their patrol car returning when he left the bus shelter. And Longley specifically testified that Gatewood was not walking very fast because their car rolled up behind him. We cannot conclude Gatewood was "fleeing" from the officers simply because he walked away from the shelter. Outlaw v. People, 17 P.3d 150, 157 (Colo.2001) (holding that defendant walking away after noticing patrol car fails to provide reasonable suspicion).
¶ 13 The trial court relied on two cases in its denial of Gatewood's motion to suppress: State v. Graham, 130 Wash.2d 711, 927 P.2d 227 (1996) and State v. Sweet, 44 Wash.App. 226, 721 P.2d 560 (1986). This case is distinguishable. In this court's Graham, 130 Wash.2d at 714, 927 P.2d 227, officers patrolling on bicycles almost ran into the defendant who was walking along the street. He was carrying a wad of money in one hand and a small plastic baggie with white rocks, which officers suspected was cocaine, in the other. Id. When he saw the officers, he looked nervous, shoved his hands into his pockets and began crossing the street against the "Don't Walk" signal. Id. We upheld the warrantless seizure. In the instant case, however, the officers saw far less. Longley observed Gatewood's widened eyes and twist to the left as the police cruiser drove by. He did not see what Gatewood was trying to hide. In fact, from his vantage point in the *429 passing patrol car, Longley could not have seen much.
¶ 14 In Sweet, 44 Wash.App. at 228, 721 P.2d 560, officers received a call about a suspicious truck which they subsequently found parked and unoccupied in front of a closed business. They then saw a man standing in the shadows nearby, and when the officers approached him, the defendant "`fled at a full run.'" Id. (quoting State v. Sweet, 36 Wash.App. 377, 379, 675 P.2d 1236 (1984)). The Court of Appeals held the ensuing Terry stop valid. The facts here are very different. Gatewood was not alone or in a suspicious place, and he did not flee from the officers but simply walked away.
¶ 15 Officers' seizure of Gatewood was premature and not justified by specific, articulable facts indicating criminal activity. Although circling back to investigate Gatewood's furtive movements was proper, the officers did not have reasonable suspicion that he committed or was about to commit a crime. They could have continued to follow Gatewood or engaged in a consensual encounter to further investigate the activity Longley observed in the bus shelter. See Rankin, 151 Wash.2d at 717, 92 P.3d 202 ("`[D]uring a consensual encounter, a police officer seeks the voluntary cooperation of an individual by asking non-coercive questions. A citizen is free to leave at any time during such an encounter or to ignore the police officer's questions.'" (alteration in original) (quoting People v. Paynter, 955 P.2d 68, 72 (Colo.1998))). Since Gatewood did not flee from the officers, it was not necessary to take swift measures.

CONCLUSION
¶ 6 Officers seized Gatewood to conduct a speculative criminal investigation. Our constitution protects against such warrantless seizures and requires more for a Terry stop. Since the initial stop of Gatewood was unlawful, the "subsequent search and fruits of that search are inadmissible." State v. Kennedy, 107 Wash.2d 1, 4, 726 P.2d 445 (1986) (citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). We reverse and suppress the evidence.
WE CONCUR: GERRY L. ALEXANDER, C.J., CHARLES W. JOHNSON, BARBARA A. MADSEN, RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, DEBRA L. STEPHENS, JJ.
NOTES
[1] At the trial court level Gatewood contested officers' assertion that he jaywalked; however, he does not contest this on appeal.
[2] Gatewood had previously been convicted of a felony (unnamed) and was not eligible to possess a firearm.
[3] Although Gatewood also argues that the officers used jaywalking as a pretext to stop, it is not necessary here to attempt to further discern the officers' subjective intent in stopping Gatewood.
[4] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).