# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73422-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JAHROD BESHAH JIMMA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 1, 2016 |
| | ) | |

APPELWICK, J. — Jimma challenges his jury conviction for possession of marijuana and first degree unlawful possession of a firearm. He contends that he was unlawfully detained and that he was interrogated without being advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). He argues that the trial court erred in denying his CrR 3.5 and 3.6 motions to suppress the marijuana and the firearm. We affirm.

## FACTS

Around 10:45 p.m. on October 31, 2013, Officer Rex Miller observed a car driving 53 miles per hour in a 40 mile per hour zone. Officer Miller stopped the car and the driver provided Officer Miller with an identification card listing her age as 19. Because it was dark, Officer Miller shone a flashlight into the car in order to

see the car's other occupants. The passengers, two females and a male, "appeared to be the same age as the driver."

While speaking with the driver, Officer Miller smelled "a very strong odor of marijuana." Believing that all of the car's occupants were not of legal age to possess marijuana, Officer Miller asked "if there was anybody in the vehicle that's 21 or older."[1] All four of the car's occupants admitted they were under 21. Officer Miller asked the occupants "where the marijuana was at." The occupants all denied having marijuana. Officer Miller told them he "had been doing the job for quite a while" and "knew what the smell of marijuana was." He asked the car's occupants a second time if anyone had marijuana. At this point, the male passenger, later identified as Jahrod Jimma, admitted that he had marijuana. Jimma reached into his jacket pocket and handed Officer Miller a small bag of what appeared to be marijuana. Officer Miller asked Jimma for identification. Jimma gave Officer Miller an instruction permit showing his age as 20. .

Officer Miller returned to his patrol car and called for backup. He waited in his patrol car until an additional officer arrived a few minutes later. The officers told Jimma that he was under arrest for possession of marijuana and handcuffed him. During a search incident to arrest, the officers found a handgun and several additional bags of marijuana in Jimma's jacket pockets. Officer Miller placed Jimma in his patrol car and advised Jimma of his <u>Miranda</u> rights. Jimma agreed

---

[1] Possession of less than 40 grams of marijuana by anyone under the age of 21 is a misdemeanor offense. RCW 69.50.4013(4), RCW 69.50.4014.

to answer questions. He admitted the gun was his and that he had purchased the marijuana.

At a CrR 3.5 and 3.6 hearing, Jimma moved to suppress the marijuana and the firearm. The trial court denied the motion. A jury convicted Jimma of possession of marijuana and first degree unlawful possession of a firearm. Jimma appeals.

## DISCUSSION

Jimma argues that the trial court erred by denying his CrR 3.5 and 3.6 motions to suppress evidence. He contends that Officer Miller unlawfully enlarged the scope of the initial traffic stop by asking questions about marijuana because he lacked a specific, individualized suspicion that Jimma possessed marijuana. He also claims that the stop constituted a custodial interrogation and thus his statements and actions during the stop—admitting to having marijuana and giving the marijuana to Officer Miller—were inadmissible because he had not been advised of his Miranda rights beforehand.

"When reviewing the denial of a suppression motion, an appellate court determines whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law." State v. Garvin, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). We review a trial court's conclusions of law de novo. Id.

## I. Terry[2] Stop

As a general rule, the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit unreasonable searches and seizures. Id. Warrantless searches and seizures are per se unreasonable absent an exception to the warrant requirement. State v. Ladson, 138 Wn.2d 343, 349, 979 P.2d 833 (1999). One such exception is an investigative detention, or Terry stop. State v. Gatewood, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

A Terry stop is permissible whenever an officer has a reasonable suspicion, grounded in specific and articulable facts, that the person stopped has been or is about to be involved in a crime. State v. Acrey, 148 Wn.2d 738, 747, 64 P.3d 594 (2003). The stop must be temporary and last no longer than necessary to effectuate the stop's purpose. State v. Williams, 102 Wn.2d 733, 738, 689 P.2d 1065 (1984). However, a stop "may be enlarged or prolonged . . . if the stop confirms or arouses further suspicions." State v. Guzman-Cuellar, 47 Wn. App. 326, 332, 734 P.2d 966 (1987). An officer may " 'maintain the status quo momentarily while obtaining more information.' " Williams, 102 Wn.2d at 737 (quoting Adams v. Williams, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972)).

In reviewing the reasonableness of a stop, we "evaluate the totality of circumstances presented to the investigating officer." State v. Glover, 116 Wn.2d

---

[2] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

509, 514, 806 P.2d 760 (1991). If the initial stop was unlawful or if officers exceed the scope of a valid stop, the evidence discovered during the unlawful portion of that stop is inadmissible. State v. Saggers, 182 Wn. App. 832, 839, 332 P.3d 1034 (2014).

Here, there is no dispute that the initial traffic stop was valid based on Officer Miller's reasonable suspicion that the driver was speeding. During the traffic stop, Officer Miller smelled what he knew, based on past law enforcement experience, to be marijuana. Officer Miller also had reason to believe that none of the car's occupants were of legal age to possess marijuana. Officer Miller therefore had a reasonable suspicion that a crime was being committed: that a minor was in possession of marijuana. This suspicion reasonably justified extending the initial detention to investigate the possible presence of marijuana in the car.

Citing State v. Grande, 164 Wn.2d 135, 187 P.3d 248 (2008), Jimma argues that continued detention was unjustified because even if Officer Miller reasonably believed that someone in the car had marijuana, he lacked individualized suspicion with respect to any particular passenger. Grande does not control here. In Grande, an officer performed a routine traffic stop on a car with two occupants. Id. at 138. The officer smelled marijuana emanating from the car and arrested both the driver and the passenger based solely on the odor. Id. at 139. The court held that the officer lacked probable cause to arrest both occupants without establishing individualized probable cause as to either occupant. Id. at 146. But, an officer may have reasonable suspicion to conduct a Terry stop based on less evidence

than is needed for probable cause to make an arrest. Acrey, 148 Wn.2d at 746-47; see also State v. Heritage, 152 Wn.2d 210, 218-19, 95 P.3d 345 (2004) (officers who smelled marijuana emanating from a group of juveniles and saw one of the juveniles holding what appeared to be a marijuana pipe were entitled to ask all the members of the group about ownership of the marijuana pipe as part of a valid Terry stop).

Here, Officer Miller had a reasonable suspicion that one of the car's underage occupants had marijuana. He was therefore entitled to ask a moderate number of questions to confirm or dispel his suspicions as part of a Terry stop. See Grande, 164 Wn.2d at 146 (an officer is not required to "simply walk away from a vehicle from which the odor of marijuana emanates and in which more than one occupant is present if the officer cannot determine which occupant possessed or used the illegal drug."). Officer Miller's brief amount of questioning did not exceed the valid scope of a Terry stop.

II.    Miranda

The Fifth Amendment privilege against compelled self-incrimination requires that custodial interrogation be preceded by advice to the accused that he or she has a right to remain silent and a right to counsel. Miranda, 384 U.S. at 478-9. If officers conduct a custodial interrogation without Miranda warnings, statements made by the suspect during the interrogation must be suppressed. Id. at 479. An interrogation is "custodial" if, after considering the circumstances, a reasonable person would feel that his or her freedom was curtailed to a degree

associated with formal arrest. State v. Short, 113 Wn.2d 35, 40, 775 P.2d 458 (1989).

Jimma argues that at the time of the traffic stop, he was in custody for Miranda purposes because he did not feel "free to leave." But, by definition, a person subject to a traffic stop or a Terry stop is not free to leave. State v. Kennedy, 107 Wn.2d 1, 4, 726 P.2d 445 (1986). " '[F]or the duration of a traffic stop . . . a police officer effectively seizes everyone in the vehicle.'" State v. Marcum, 149 Wn. App. 894, 910, 205 P.3d 969 (2009) (second alteration in original) (quoting Arizona v. Johnson, 555 U.S. 323, 327, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009). But, this does not make a stop comparable to a formal arrest for Miranda purposes, because traffic or Terry stops occur in public and are "presumptively temporary and brief." Berkemer v. McCarty, 468 U.S. 420, 437, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984). Thus, a "detaining officer may ask a moderate number of questions during a Terry stop to determine the identity of the suspect and to confirm or dispel the officer's suspicions without rendering the suspect 'in custody' for the purposes of Miranda." Heritage, 152 Wn.2d at 218.

Here, Jimma was not in custody when he admitted to possessing marijuana and gave Officer Miller the bag of marijuana. The stop occurred on a public road and lasted only a few minutes. Officer Miller asked the car's occupants a limited number of questions, all directed toward confirming or disproving his suspicion that one of the occupants illegally possessed marijuana. Jimma argues that the encounter was custodial because Officer Miller was in uniform, carried a firearm,

and shone a bright flashlight in the car. But, Jimma does not explain how these facts differ from any routine traffic stop. The scope and duration of the stop was reasonably related to its legitimate purposes: determining whether a traffic infraction had been committed and whether any of the car's occupants were committing a crime. Accordingly, the trial court did not err by admitting Jimma's statements and actions during the stop.

We affirm.

WE CONCUR: