[No. 16677-8-I.   Division One.   February 23, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. TIMOTHY CLARK, *Appellant*.

*Dori Jones* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *David Smith* and *Ricardo Martinez, Deputies,* for respondent.

WILLIAMS, J.—Timothy Clark was convicted by a jury of one count of first degree assault and two counts of first degree robbery. He appeals, contending the trial court erred in (1) finding the affidavit in support of a search warrant sufficient, (2) failing to enter written findings of fact and conclusions of law following the suppression hearing, and (3) computing his sentence. Clark also challenges the sufficiency of the evidence.

On December 24, 1984, Lisa Hicks, Kelly Neal and Bruce Biermann attended the evening service at St. Mark's Cathedral in Seattle. The three left the service at 12:20 a.m. and walked to Biermann's car. Biermann went to unlock the driver's side while Neal and Hicks stood on the passen-

ger side. A man approached the two women, stood between them and pointed a gun. He said, "Give me your purses," and they did. Biermann looked up and the man said to him, "Give me your wallet." Biermann replied, "I don't have it." The man then shot Biermann in the chest and fled.

The purse taken from Lisa Hicks contained checks and identification with her name, but her parents' address and telephone number. Some time before the incident, Lisa had moved out of her parents' home and into an apartment. Most of her friends had her new address and telephone number. Her parents' number was not listed under her name in the telephone book.

Less than 2 hours after the robbery and assault, a man telephoned Lisa's parents, asking for Lisa. Lisa's mother answered and asked who was calling. The man did not answer but asked "How is the guy?" Lisa's mother hung up. Twenty-five minutes later the same man called again asking the same questions. These calls were reported to the police and a "trap" was put on the telephone. The next day, a man called two more times asking the same questions and the police traced the calls. A warrant was issued to search the address obtained by the trace, and evidence incriminating Clark was recovered.

At the hearing to suppress the evidence, the trial court made the following ruling in its oral opinion:

It would appear from the affidavit itself, a fair reading of that would indicate that Lisa Hicks herself did not have the telephone listing in her own name, but was listed in her mother's name, and the only way that that information or the only way Miss Hicks could be contacted would be by utilization of information contained in the purse taken by the alleged culprit. That I find is sufficient . . . [A]ffidavits under a warrant must be tested in a common-sense manner rather than hypertechnically and any doubts, if there be any, should be resolved in favor of the warrant.

. . . [W]hen application for the search warrant is made, the judicial officer is obliged to ascertain whether

the warrant sought is being requested on reasonable grounds, and the question of probable cause is really reduced to the question of whether or not there is a "substantial basis" for the warrant. I find that under the circumstances that it was and the defendant's motion to suppress the fruits of the search by the search warrant will be denied.

No findings of fact or conclusions of law were entered.

At the conclusion of the trial, Clark was found guilty by a jury of two counts of first degree robbery and one count of first degree assault. In sentencing for the assault, the court calculated Clark's "offender score" to be a nine by counting each of the two robbery convictions as separate current felonies.

The first question is whether the information in the affidavit was sufficient to support the issuance of the search warrant. The person who made the telephone calls could only have connected the "guy", Lisa Hicks and her parents' telephone number from the purse taken in the robbery. There is no other connection reasonably possible under the circumstances, since the four calls were identical and the first was made less than 2 hours after the robbery and shooting, long before any media coverage. There was probable cause for the issuance of the warrant. *State v. Cord,* 103 Wn.2d 361, 365–66, 693 P.2d 81 (1985); *State v. Riley,* 34 Wn. App. 529, 531, 663 P.2d 145 (1983); *see also State v. Seagull,* 95 Wn.2d 898, 907, 632 P.2d 44 (1981); *State v. Partin,* 88 Wn.2d 899, 904, 567 P.2d 1136 (1977).

■ The second question is whether the court erred in not entering written findings of fact and conclusions of law following the suppression hearing. Although formal findings and conclusions are required by CrR 3.6, the court's comprehensive oral opinion and the record of the hearing render the error harmless. *State v. Hoyt,* 29 Wn. App. 372, 379, 628 P.2d 515 (1981).

■ The third question is whether the court erred in calculating Clark's offender score. According to the sentencing reform act, RCW 9.94A.400(1)(a), separate crimes encom-

passing the same criminal conduct shall be counted as one crime in determining criminal history. Under the statute, all three of Clark's crimes should have been considered part of the same conduct, since there was no substantial change in the nature of Clark's criminal objective. *State v. Edwards,* 45 Wn. App. 378, 381–82, 725 P.2d 442 (1986).

The last question is whether there was sufficient evidence adduced at trial to support the verdict. We have examined the record and determined that the charges were proved beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980).

The judgments of guilt as to each crime are affirmed and the cause remanded to the trial court for redetermination of the sentence.

RINGOLD, A.C.J., and PEKELIS, J., concur.

Review denied by Supreme Court May 5, 1987.