[No. 28923-3-I. Division One. December 28, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. KEVIN C.
SMITH, *Appellant*.

202

*Elizabeth Govaerts* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Sheri Nakashima, Deputy,* for respondent.

FORREST, J. — Kevin C. Smith appeals his conviction of possession of marijuana with intent to manufacture or deliver claiming that his conviction should be reversed or dismissed because the trial court failed to enter written findings and conclusions in the CrR 3.6 hearing and because the court erred in denying his motion to suppress. We reverse and dismiss.

On October 3, 1990, King County Detective William Quaade received a telephone call from a woman who said she had observed suspicious activity at the house next door. The house had recently been sold and Smith was renting it. The neighbor informed Quaade that the basement windows had been boarded up shortly after the house was rented and that the tenant did not live there but only appeared once every 2 weeks. The neighbor also observed the electricity meter "turning rapidly". About an hour after this telephone conversation, Quaade and another detective, Mike Orendorff, went to the neighbor's house. While there, the detectives noticed a U-Haul truck parked in the driveway of Smith's house.[1] The neighbor

---

[1] According to a diagram drawn by Orendorff, the driveway led to the garage which was detached from the house. The house was to the left of the driveway and garage. A sidewalk led from the street to the front door of the house. The U-Haul was backed into the driveway and angled toward the rear of the house so that it almost completely blocked the area between the garage and the house.

stated that the truck had pulled up shortly after she finished speaking with Quaade on the telephone.

The detectives were speaking with the neighbor near an open window in her house. While conversing, Orendorff told Quaade he heard the sound of a ballast being moved.[2] Orendorff testified he recognized the sound as a result of breaking up approximately 300 marijuana grow operations during his 7 years in the drug enforcement unit. Based on this sound, Orendorff informed Quaade that a marijuana grow operation was being moved next door. Quaade and Orendorff returned to their vehicle and drove into the driveway of Smith's residence. The detectives walked down the driveway and past the side of the house toward the parked U-Haul. As they walked between the house and the truck, they heard activity emanating from the back of the truck.

As Orendorff approached the U-Haul, he smelled marijuana. Orendorff walked between the house and the truck, encountered Smith seated at the back of the truck, and identified himself. Meanwhile, Quaade, unable to squeeze between the truck and the house, approached the truck from the other side. The back of the truck was open. The detectives looked into the truck and saw black plastic, lights, a ballast, and a large number of marijuana plants. Both detectives testified they looked into the truck for the purpose of determining whether anyone was inside.[3]

The detectives placed Smith under arrest and asked him if any other persons were present. Smith informed them that a woman was in the basement of the house. The detectives accompanied Smith into the basement and took a woman into custody. The detectives testified they entered the house for the purpose of officer safety.

---

[2]A ballast transforms 110-volt power into 220-volt power and typically weighs between 35 and 50 pounds. Ballasts are used to power halogen lamps which are commonly used to grow marijuana.

[3]The neighbor who called the detectives told them two people had driven up in the U-Haul.

Quaade drove the U-Haul to the courthouse and placed the contents of the truck into evidence. On January 7, 1991, Smith was charged by information with possession of marijuana with the intent to manufacture or deliver.

The trial court denied Smith's motion to suppress at a CrR 3.6 hearing held on May 13, 1991. The court gave an oral opinion denying the motion, but no findings and conclusions have ever been entered as required by CrR 3.6.

Smith stipulated to the facts and the trial court found him guilty as charged. Smith appeals from the adjudication and a sentence within the standard range.

Smith asserts that the absence of the findings required by CrR 3.6 requires reversal and dismissal. The State concedes error but asserts that the error is harmless.[4] In support of this position, the State cites three cases applying CrR 3.6: *State v. Clark*,[5] *State v. Stock*,[6] and *State v. Hoffman*.[7] *State v. Hoffman, supra*, does not support the State's position. In that case, findings were entered after a contested hearing so it was unnecessary to consider whether the appellate court would overlook the absence of findings. The State quotes the following language from the court in *Hoffman* in support of its position: "While careful adherence to the requirements of CrR 3.6 is always the safest course, the purpose of CrR 3.6 is to have a record made and that purpose has been served here." (Footnote omitted.) *Hoffman*, 116 Wn.2d at 95. The State's quotation is taken out of context and its use is misleading. The *Hoffman* court was responding to the defendant's contention that the delay in entry of findings from the date of the suppression hearing until after the trial was

---

[4]*See State v. Wicker*, 66 Wn. App. 409, 414, 832 P.2d 127 (1992) (an error is harmless if the reviewing court can conclude beyond a reasonable doubt that any reasonable jury would have reached the same result if the error had not occurred).

[5]46 Wn. App. 856, 732 P.2d 1029, *review denied*, 108 Wn.2d 1014 (1987).

[6]44 Wn. App. 467, 722 P.2d 1330 (1986).

[7]116 Wn.2d 51, 804 P.2d 577 (1991).

prejudicial. Since no fixed time limit is prescribed for the entry of CrR 3.6 findings, it is hardly surprising that when findings are made at the conclusion of the trial, but well before the appeal, the Supreme Court found no need to reverse. Plainly, *Hoffman* does not countenance complete failure to ever enter findings.

Likewise, in neither *Clark* nor *Stock* did the court indicate that the State may completely disregard the requirements of CrR 3.6 under all circumstances. In *Clark*, the court chose to overlook the failure to enter findings and conclusions because the trial court's "comprehensive oral opinion and the record of the hearing render[ed] the error harmless." *State v. Clark*, 46 Wn. App. 856, 859, 732 P.2d 1029, *review denied*, 108 Wn.2d 1014 (1987). In *Stock*, no testimony was taken at the suppression hearing and there were no disputed issues of fact. The only evidence as to whether probable cause to issue the search warrant existed was an affidavit of the officer. Under those circumstances, the court found no prejudice to the defendant from the lack of findings and conclusions and proceeded to review the trial court's oral decision.

█ In addition to the cases dealing with CrR 3.6, the State also cites four cases[8] dealing with CrR 3.5.[9] We agree that the State's obligation is similar under both CrR 3.5 and CrR 3.6 and that cases applying CrR 3.5 can furnish appropriate guidance. The courts in the cases cited were willing to overlook the lack of formal findings and address the merits of the suppression or confession issue. But, as was true in the cases involving CrR 3.6, the courts in the CrR 3.5 cases also

---

[8]*State v. Massey*, 60 Wn. App. 131, 803 P.2d 340, *review denied*, 115 Wn.2d 1021 (1990), *cert. denied*, 499 U.S. 960, 113 L. Ed. 2d 648, 111 S. Ct. 1584 (1991); *State v. Davis*, 34 Wn. App. 546, 662 P.2d 78, *review denied*, 100 Wn.2d 1005 (1983); *State v. Kelly*, 33 Wn. App. 541, 655 P.2d 1202 (1982), *rev'd*, 102 Wn.2d 188, 685 P.2d 564 (1984); *State v. Hoyt*, 29 Wn. App. 372, 628 P.2d 515, *review denied*, 95 Wn.2d 1032 (1981).

[9]CrR 3.5(c) states, in part, as follows:

"After the hearing, the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor."

described the action in terms of "may", clearly indicating the action was a matter of discretion based on the circumstances of the particular case.[10]

From this history, the State has apparently concluded that CrR 3.6 findings are not very important and that if there is an oral opinion, the appellate court will address the merits.[11] We emphatically disagree. The fact that the appellate court has exercised its discretion to overlook the lack of findings in some cases by no means indicates that it will do so routinely.

In any event, all the cases under CrR 3.6, and CrR 3.5 as well, require a clear and comprehensive oral opinion so that the appellate court is left with no doubt as to the court's findings.[12] Such is not the case here.

The trial court's oral opinion was bifurcated by the lunch recess. In its before-lunch ruling, the court appears to have found that the detectives had probable cause to arrest even before they entered into the curtilage of the Smith property. In the after-lunch portion of the opinion, the court seems to have adopted the State's argument at trial that the detectives had an articulable suspicion which entitled them to approach the defendant at the back of his own property to make a *Terry* stop. Significantly, in this regard, a trial court is always entitled to change views expressed in an oral opinion upon presentation of the findings of fact.[13] Unchal-

---

[10]We note that in *State v. Davis*, 34 Wn. App. 546, 622 P.2d 78, *review denied*, 100 Wn.2d 1005 (1983), the court did use the word "must". However, the cases cited immediately following that statement were both "may" cases. We are confident that the court did not mean to hold that an appellate court is obligated to overlook the absence of a finding required by CrR 3.5 and that the word "must" was used inadvertently.

[11]We make this inference because the State never tried to have findings entered even after Smith's brief pointed out the deficiency. Indeed, it was not until oral argument when the court's dissatisfaction with the lack of findings became apparent that the State requested a remand for findings.

[12]*See, e.g., State v. Clark*, 46 Wn. App. at 859 (failure to enter written findings and conclusions as required by CrR 3.6 held harmless error because the court's oral opinion was comprehensive).

[13]*See State v. Dailey*, 93 Wn.2d 454, 458, 610 P.2d 357 (1980) (a trial court's oral statements are merely a verbal expression of its informal opinion at the

lenged formal written findings, however, are treated as definitive for purposes of appeal.[14]

The State rather half-heartedly suggests that the trial court was advancing alternative theories to sustain the search, but this is not clearly apparent. Indeed, the more natural reading of the transcript of the oral ruling is that the court's after-lunch "reasonable grounds for suspicion" analysis was the final basis of the court's ruling.

■ There are other examples of the lack of clarity and precision in the court's opinion. Prior to the lunch recess, the court stated that the mobility of the U-Haul would constitute exigent circumstances justifying the warrantless seizure, but in the afternoon session the court rejected any finding as to whether the detectives could adequately have sealed off Smith's driveway to prevent him from removing the U-Haul. In the afternoon portion of the opinion, the court appears to have held that the discovery of the items in the truck was an inadvertent discovery incident to a *Terry* stop and search for a second individual, whereas in the morning it appears that the court felt the seizure of the items in the truck was based on probable cause and the warrant requirement was excused by exigent circumstances. At one point, the court appears to have accepted Orendorff's rather remarkable testimony that he could identify, from the sound alone, that a ballast was being moved and, hence, that part of a marijuana grow operation was being loaded into the truck. However, at another point, the court seemed to treat the noise as merely one factor contributing to the detectives' reasonable suspicion. When defendant's counsel was contesting a finding of inadvertent discovery, the court said it did not recall any testimony on the issue but then observed "I guess the record will speak for itself. I have no recollection of that." This court is not obligated to search the

---

time, "necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned.' ") (quoting *Ferree v. Doric Co.*, 62 Wn.2d 561, 567, 383 P.2d 900 (1963)).

[14]*Metropolitan Park Dist. v. Griffith*, 106 Wn.2d 425, 433, 723 P.2d 1093 (1986).

record and decide how the trial court would have evaluated that evidence, if it was present.

 It is unnecessary to pursue the matter further. We find that the lack of formal findings and conclusions renders us unable to be sure exactly what the court's theory was or exactly what facts the court found to be established by the testimony. The trial court's opinion is a far cry from the "comprehensive opinion" which has been fundamental to every case in which the court proceeded to address the merits of a confession or suppression issue in the absence of the findings required by CrR 3.5 or CrR 3.6.

Lack of written findings of fact on a material issue in which the State bears the burden[15] simply cannot be harmless[16] unless the oral opinion is so clear and comprehensive that written findings would be a mere formality. The trial court's opinion falls far short of that standard. Accordingly, the conviction cannot stand on the present record.

 It was not until oral argument that the State requested a remand for delayed entry of findings. This comes too late. The State has offered no excuse for not having findings entered in the first instance. Nor did it proceed to have them entered upon receipt of the notice of appeal. Even after receipt of Smith's opening brief pointing out the deficiency, the State made no effort to have the findings entered. The events leading to Smith's arrest took place in October 1990. The case was tried on May 13, 1991. It is now December 1992. By the time findings would be entered on remand, a renewed appeal brought on for hearing, and an opinion filed in this court, close to 3 years would likely elapse. Even though Smith's liberty interest is not at stake, this long delay is prejudicial.

---

[15]*See State v. Leach*, 113 Wn.2d 735, 738, 782 P.2d 1035 (1989) ("[T]he burden rests firmly upon the State to rebut the presumption [that warrantless searches and seizures incident thereto are per se unreasonable] by establishing the existence of one of the 'carefully delineated' exceptions to the warrant requirement.") (quoting *Arkansas v. Sanders*, 442 U.S. 753, 760, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979)).

[16]*State v. Clark, supra.*

The defendant has a right to an appeal "without unnecessary delay." Const. art. 1, § 10.[17] Although the Supreme Court has not adopted a rule fixing an exact number of days for entry of findings pursuant to CrR 3.6, the same principles that underlie the Supreme Court's adoption of speedy trial rules, with the Draconian sanction of dismissal with prejudice for failure to bring a charge to trial within the prescribed time, require that the courts not allow "unnecessary" delay in processing of criminal appeals. A delay in the appellate process of this magnitude, without explanation or justification, caused by failure to enter findings which could and should have been entered in the first instance is clearly "unnecessary".

We are persuaded that consistent and firm enforcement of CrR 3.6 will contribute to the fair and expeditious handling of criminal appeals in the interest of both the defendant and the public. First, the preparation of the findings will allow the appealing defendant to know precisely what is required in order to prevail on appeal. Indeed, in some cases, findings supported by evidence in the record may demonstrate a lack of merit in an appeal. At a minimum, the appealing defendant will be spared the wasted effort of moving to dismiss the appeal for failure to file findings and conclusions and can write a more focused brief. Second, with adequate findings and conclusions, some criminal appeals may be summarily disposed of by a motion on the merits since the only issue will be the adequacy of the evidence to support the findings. If a full argument is merited, this court can immediately focus on the dispositive issues of the appeal. Finally, when a case is remanded for findings after the filing of appellant's brief, an appellant can claim that the findings are "tailored" to meet the errors asserted on appeal. The more cursory the court's oral remarks, the harder it will be to tell whether, in fact, there has been some tailoring. While we have every confidence that prosecutors and judges would operate in

---

[17]*See also* Const. art. 1, § 22 (amend. 10) (an accused has the right to a speedy public trial by an impartial jury and the right to appeal in all cases).

good faith, nonetheless, such claims must be examined and may involve delicate and difficult decisions.[18] These considerations all support a firm enforcement of the rule, if indeed any support is needed to enforce a rule such as CrR 3.6 whose meaning is clear from its plain language. Our decision is even more compelling in light of the fact that the entire issue can easily be foreclosed by the State's compliance with CrR 3.6 by having findings entered promptly and well before appellant's opening brief is due.

We are reinforced in these views by the unsatisfactory history of juvenile appeals. JuCR 7.11(d) imposes an analogous duty on the prosecutor to submit findings of fact and conclusions of law as to the defendant's guilt within 21 days after receipt of the notice of appeal. The appellate courts have been tolerant of failure to comply with the rule and have remanded where a finding on a necessary element of the crime was lacking[19] and have accepted late findings after the filing of appellant's brief where no prejudice has been established.[20] Whether primarily as a result of this tolerance or not, the fact is that there has been a wholesale failure by prosecuting attorneys to perform this obligation. The result has been an enormous waste of time and energy by defense counsel and by this court in addressing these issues.

In response, Division Three has adopted a per se rule that failure to secure entry of findings in accordance with the rule will result in dismissal.[21] Division One has so far failed to impose such a drastic remedy, but has imposed sanc-

---

[18]*See generally State v. Fellers*, 37 Wn. App. 613, 683 P.2d 209 (1984); *State v. McGary*, 37 Wn. App. 856, 683 P.2d 1125, *review denied*, 102 Wn.2d 1024 (1984).

[19]*See, e.g., State v. Souza*, 60 Wn. App. 534, 805 P.2d 237, *review denied*, 116 Wn.2d 1026 (1991).

[20]*See, e.g., State v. Bennett*, 62 Wn. App. 702, 814 P.2d 1171 (1991), *review denied*, 118 Wn.2d 1017 (1992).

[21]*State v. Pena*, 65 Wn. App. 711, 829 P.2d 256 (1992).

tions.[22] Indeed, Division One has been forced to adopt a special procedure in the clerk's office to remind the prosecuting attorney of his or her obligation to submit the appropriate findings once an appeal has been filed.

In short, CrR 3.6 should be complied with. We will not condone any repetition of the juvenile experience. When a case comes before this court without the required findings, there will be a strong presumption that dismissal is the appropriate remedy. We do not say this court will never overlook the lack of findings and proceed to the merits, but it will only be done for compelling reasons, none of which are here present.

Reversed.

PEKELIS and BAKER, JJ., concur.