# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47691-6-II |
| Respondent, | |
| v. | |
| JAQUAIL WALTER ROBERSON, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Jaquail Roberson appeals his convictions for one count of first degree unlawful possession of a firearm and one count of unlawful possession of a controlled substance—methamphetamine.  Roberson argues that a warrantless search of his backpack was unlawful and that the evidence obtained as a result should have been suppressed.  He also argues that the trial court's failure to enter written findings and conclusions following the CrR 3.5 and 3.6 hearing requires reversal of his convictions and remand for a new trial.  Because the trial court's oral ruling following the suppression hearing is insufficient for appellate review we remand for entry of written findings and conclusions.

## FACTS

On January 14, 2015, the State charged Roberson with one count of first degree unlawful possession of a firearm and one count of unlawful possession of a controlled substance.  Roberson moved to suppress all evidence resulting from the warrantless search of his backpack and his statements made to Officers Robert Tennyson and Ken Bowers under CrR 3.6 and CrR 3.5.  Officers Tennyson and Bowers testified at a hearing on the motion.

According to Officers Tennyson and Bowers, on January 13, 2015, they responded to a shooting in southwest Tacoma reported by Roberson. After questioning Roberson about the shooting, the officers noticed Roberson was sweating profusely and struggling to stand and walk steadily. Roberson told the officers he struggled with asthma. The officers asked Roberson for his address for their police report. Roberson told the officers he could not remember the address but told them the name of the apartment building. Roberson informed the officers that he was going to call a taxi to take him home. Officer Tennyson offered to drive Roberson home because he appeared ill and in order to obtain Roberson's address. Roberson accepted Officer Tennyson's offer.

Officer Tennyson explained to Roberson that before he could drive Roberson home, he needed to pat Roberson down for weapons. Roberson consented to the pat down and placed his hands on the trunk of Officer Tennyson's patrol vehicle. Roberson had a backpack with him that Officer Tennyson handed to nearby Officer Bowers while he frisked Roberson. During the frisk, Officer Tennyson discovered a single bullet in the front pocket of Roberson's pants. Officer Tennyson asked Roberson if he had any guns on him. Roberson answered that he did not. Officer Bowers then asked Roberson if he had any guns in his backpack. Roberson told the officers that he had a gun in the backpack.

Officer Tennyson immediately placed Roberson in handcuffs, and Officer Bowers opened Roberson's backpack and retrieved the gun. Officer Bowers removed the magazine from the gun and cleared it. Officer Bowers read Roberson his *Miranda*[1] rights and Roberson was placed in the backseat of the patrol vehicle. The officers then ran a background check on

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Roberson and determined that Roberson had a prior felony conviction and could not legally possess a firearm.  The officers continued to search the bag and discovered crystal methamphetamine and marijuana.

After hearing argument on the motion, the trial court issued an oral ruling denying Roberson's motion to suppress.  The trial court stated in relevant part:

> It seems to me that the thing, the investigation takes a turn when a bullet is found on him, when a vest is found on him, and then he tells the officers that he's actually got a gun in the bag.  It seems to me that, at that point, the investigation changes in character that the officer safety issues are heightened, that the defendant's out of custody, that there's now a gun in play, that they are investigating a shooting.  They're not simply going to let, I wouldn't think, I can't imagine what would happen if the officers simply drove away from the scene with him sitting there, having just been the target of a shooting, according to him, left him on the corner of the road theoretically to become the target of a shooting again.  I can't imagine the officers being willing to do that.
> I think it is reasonable to search the backpack once the chain of events has begun.  I think it was appropriate to do the pat-down of his person at the outset, and I think, as more information became available to them, that the nature of their inquiry changed and that the backpack was much more of a threat than it had been at the outset.
> I mean, I agree completely with the idea that Mr. Roberson was a reported crime victim here.  He was not in custody at the outset.  He was being treated as a witness, and a crime victim, and it's only after the character of the investigation changes, based on information he provided or his person provided, that his status changed, so I'm going to deny the defense motion.

1 Verbatim Report of Proceedings at 117-118.  Roberson asked for clarification on the trial court's theory as to why the officers did not need a warrant to search the bag.  The trial court explained, "Based on community caretaking and based on *Terry*,[2] based on information that they later discovered."  1 VRP at 118-19.

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The trial court also issued an oral ruling denying Roberson's motion to suppress his statements to the officers. No written findings of fact or conclusions of law were entered.

Following trial, a jury found Roberson guilty of both charges. Roberson appeals.

ANALYSIS

Roberson argues in part that the trial court's failure to enter written findings of fact and conclusions of law pursuant to CrR 3.5 and 3.6 following the suppression hearing requires reversal of the convictions and remand for a new trial. We agree that the trial court's oral ruling is insufficient to permit appellate review, but hold that remand for entry of written findings and conclusions is the proper remedy.

CrR 3.5 and 3.6 require the trial court to enter written findings of fact and conclusions of law following a suppression hearing. Nonetheless, we have found the absence of written findings and conclusions harmless in some cases where the trial court's oral opinion is sufficient to permit appellate review. *State v. Smith*, 68 Wn. App. 201, 206, 842 P.2d 494 (1992). However, the "[l]ack of written findings of fact on a material issue in which the State bears the burden simply cannot be harmless unless the oral opinion is so clear and comprehensive that written findings would be a mere formality." *Smith*, 68 Wn. App. at 208 (citations omitted).

When reviewing a trial court's ruling on a suppression motion, we review challenged findings of fact for substantial evidence, challenged conclusions of law de novo, and then we determine whether the findings support the conclusions. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Substantial evidence is evidence sufficient to convince a reasonable person of the truth of the trial court's finding. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999).

4

"Article I, section 7 of the Washington State Constitution provides for broad privacy protections for individuals and generally prohibits unreasonable police invasions into personal affairs. We presume that a warrantless search of an individual's personal item, such as a backpack, violates these protections unless the search falls within 'one of the few carefully drawn and jealously guarded exceptions.'" *State v. Brock*, 184 Wn.2d 148, 153-54, 355 P.3d 1118 (2015) (internal quotation marks omitted) (quoting *State v. Byrd*, 178 Wn.2d 611, 616, 310 P.3d 793 (2013)). "The State bears the burden to prove that one of the narrowly drawn exceptions to the warrant requirement validates the warrantless search." *State v. Kirwin*, 165 Wn.2d 818, 824, 203 P.3d 1044 (2009).

Here, the trial court's oral opinion was unclear and imprecise as to under what theory it found the warrantless search lawful. The trial court offered three divergent explanations for its decision that the warrantless search was lawful–community caretaking, *Terry,* and "information that they later discovered." 1 VRP at 118-19. The trial court also stated, "I think it is reasonable to search the backpack once the chain of events has begun." 1 VRP at 118. In order to prove that the community caretaking or *Terry* exceptions justified the warrantless search, the State must show that different conditions were met.

The community caretaking exception "allows for the limited invasion of constitutionally protected privacy rights when it is necessary for police officers to render aid or assistance." *State v. Schultz,* 170 Wn.2d 746, 754, 248 P.3d 484 (2011) (quoting *State v. Thompson*, 151 Wn.2d 793, 802, 92 P.3d 228 (2004)). In order to justify a search under the community caretaking exception the State must show that

> "(1) the police officer subjectively believed that someone likely needed assistance for health or safety concerns; (2) a reasonable person in the same situation would

5

similarly believe that there was need for assistance; and (3) there was a reasonable basis to associate the need for assistance with the place being searched[;]" . . . (4) there [was] an imminent threat of substantial injury to persons or property[;] (5) state agents believe[d] a specific person or persons or property [were] in need of immediate help for health or safety reasons[;] and (6) the claimed emergency [was] not a mere pretext for an evidentiary search.

*Schultz*, 170 Wn.2d at 754 (internal quotation marks omitted) (quoting *State v Kinzy*, 141 Wn.2d 373, 386, 5 P.3d 668 (2000)).

Under the *Terry* investigative stop exception, an officer may, without a warrant, briefly detain a person for questioning if the officer reasonably suspects that the person stopped is or is about to be engaged in criminal activity. *State v. Fuentes*, 183 Wn.2d 149, 158, 352 P.3d 152 (2015). An officer may conduct a brief frisk for weapons, but only if a reasonable safety concern exists to justify the protective frisk. *Fuentes*, 183 Wn.2d at 158. A valid *Terry* stop requires that the officer have reasonable suspicion of criminal activity based on specific and articulable facts known to the officer at the inception of the stop. *Fuentes*, 183 Wn.2d at 158.

The trial court's oral ruling was not sufficiently clear and comprehensive to permit meaningful review of the suppression decision. *State v. Thompson*, 73 Wn. App. 122, 130, 867 P.2d 691 (1994). The lack of formal findings renders our court unable to discern what facts the court found to be established by the testimony. *Smith*, 68 Wn. App. at 208. Moreover, the court's oral ruling failed to articulate which facts it relied on to support its conclusion that the requirements of the community caretaking or *Terry* exceptions were met. *See State v. Barber*, 118 Wn.2d 335, 343, 823 P.2d 1068 (1992) (remand is necessary where the trial court's findings do not tell us precisely what specific and articulable facts taken together with rational inferences from those facts reasonably support a warrantless intrusion).

No. 47691-6-II

The State urges us to look to the court's comments made during trial to further discern the court's findings and conclusions at the suppression hearing. However, we have no obligation to comb through the record to cobble together appropriate findings. *State v. Head*, 136 Wn.2d 619, 624, 964 P.2d 1187 (1998). Furthermore, the trial court's comments later in the proceedings provide no further elucidation as to the court's factual findings.

The trial court's failure to enter specific and articulable facts or clearly articulate its conclusions of law does not permit this court to determine whether the warrantless search was based on legally permissible and adequate reasons. The appropriate remedy is remand. *Head*, 136 Wn.2d at 624. We therefore remand this case for expedited entry of findings and conclusions in accord with CrR 3.5 and CrR 3.6.[3]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Maxa, A.C.J.

_____
Melnick, J.

---

[3] Without proper findings and conclusions we are unable to address Roberson's other assignments of error.