IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

THE STATE OF WASHINGTON,               )       No. 76222-2-I
                                       )
                    Respondent,        )
                                       )
        v.                             )       UNPUBLISHED OPINION
                                       )
STEVEN NICKOLAS VANDESTEEG,            )
                                       )
                    Appellant.         )       FILED:  July 23, 2018
_____)

SCHINDLER, J. — A jury found Steven Nickolas Vandesteeg guilty of possessing a stolen car and attempting to elude a pursuing police vehicle. Vandesteeg seeks reversal, arguing the court abused its discretion by denying the motion to suppress an in-court identification because it was impermissibly suggestive and not reliable. Because the identification was not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification, we affirm.

FACTS

On April 2, 2016 at approximately 9:10 a.m., Kent Police Department Officer Kevin Bateman was driving his police car on 108th Avenue SE. Officer Bateman saw a white Acura Integra "with no hood and no front plate." The driver was not wearing a seatbelt. Officer Bateman could see the driver was an unshaven white male.

When the Acura passed Officer Bateman, he saw "a side profile of the driver." Officer Bateman called dispatch about the license plate. The car "didn't come back stolen, but the plates didn't match completely with the description that was associated to them."

Officer Bateman drove his police car behind the Acura and turned on his emergency lights. The driver of the Acura did not make "any effort to slow down." The driver "made a hard left through the red turn arrow" down a dead-end street and "started accelerating pretty rapidly."

Officer Bateman blocked the Acura at the end of the street and got out of the police car. The driver got out of the Acura and stared "straight at" Officer Bateman with "that deer in the headlight look." The driver was wearing a light blue T-shirt and "grungy, dirty blue jeans." Officer Bateman was about "[f]ifteen, twenty feet" from the driver. The driver "looked back" at Officer Bateman as he climbed over the fence and ran away.

> [H]e kind of froze for a few seconds. Stared at me. That's when I yelled stop. Police. After a couple seconds he took off running back towards me a little bit . . . Then he ran around the back of the car and continued running east towards the fence.

Officer Bateman called for backup. The police did not find the driver.

Officer Bateman described the driver in the police report as "[w]hite male, late 20s/early 30s, shaved with light brown hair, facial hair but not a beard, wearing a light blue T-shirt and dirty jeans." Officer Bateman states the driver was 5 feet 8 inches to 5 feet 10 inches tall and between 160 and 180 pounds.

Officer Bateman searched the car. After finding "shaved" keys, Officer Bateman impounded the car to be processed for fingerprints. The Kent Police Department

confirmed the car was stolen from the Fred Meyer parking lot in Maple Valley on April 1. The car belonged to Magot Lewis. Officer Bateman initially closed the case because he "didn't have any additional evidence or leads."

The King County Regional Automated Fingerprint Identification System (AFIS) processed the fingerprints obtained from the car. AFIS matched the fingerprints to Steven Nickolas Vandesteeg. On May 24, Officer Bateman found two photographs of Vandesteeg in the King County database.[1] Officer Bateman instantly recognized Vandesteeg as "the guy I was face to face with." Previous booking information listed Vandesteeg's height as "six feet" and weight as "155 pounds." The Department of Licensing listed Vandesteeg's weight as 180 pounds.

The State charged Vandesteeg with possession of a stolen vehicle and attempting to elude a pursuing police vehicle. Vandesteeg pleaded not guilty.

Before trial, Vandesteeg filed a motion to suppress Officer Bateman's identification of him. Vandesteeg argued the single-photo showup identification was impermissibly suggestive and not reliable.

Officer Bateman testified at the CrR 3.6 hearing. Officer Bateman stated that he had worked for the Kent Police Department for 21 years. Officer Bateman testified that he has "looked at a single photograph to make an identification" before. Officer Bateman said he has "more often excluded people than included them" after looking at a single photograph to identify someone. Officer Bateman testified, "[W]hat I do every day is I look at people. I try to find people. . . . I'm trained to say, especially in a case like this where I got a really good look at the person, that, yes, that's him." Officer

---

[1] One photograph was listed under the alias "Steven Moltrum."

3

Bateman said that when the driver got out of the Acura, Officer Bateman was "very specifically looking at him to see who he is and then also to make sure there's nothing in his hands as well." Officer Bateman testified that the encounter "stood out" because this "was the only case where I had somebody physically get out and take off and run from me."

Officer Bateman testified, "The instant I saw the booking photo I was like that's the guy that I was face to face with." Officer Bateman said he was "100 percent" certain that Vandesteeg was "the man that [he] had seen on April the 2nd."

The court admitted into evidence the declaration of defense expert Dr. Geoff Loftus. Dr. Loftus testified that a showup procedure is "intrinsically unreliable." Dr. Loftus stated that there were "several specific issues" with Officer Bateman's identification, including the time period between the event and the identification, that Officer Bateman "carried out the showup procedure on himself," and that Officer Bateman "already knew of the connection between the offending vehicle and Mr. Vandesteeg."

Vandesteeg argued the identification was impermissibly suggestive because Officer Bateman knew that the fingerprints from the car matched Vandesteeg and Officer Bateman looked at only a single photograph. Vandesteeg asserted the factors under Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972), weighed against admitting the identification. Vandesteeg argued that Officer Bateman had an opportunity to see him for only "30 seconds to a minute," his "attention was not that focused," the description was "extremely generic," he inaccurately estimated Vandesteeg's height and weight, and the identification occurred "months later."

The prosecutor conceded, "There's no question it's suggestive." The prosecutor argued that based on the totality of the circumstances, the identification was reliable. The prosecutor asserted Officer Bateman had sufficient opportunity to view the driver from 15 to 20 feet away as he stood by the Acura and as the driver ran directly toward him, and Officer Bateman's "degree of attention was extremely high." "[Officer Bateman] got the gender right. He got the race right. He more or less got the height right. He more or less got the weight right. He got the scurfiness on the face right." The prosecutor noted Officer Bateman testified he was "certain" and there was "no question in his mind" that Vandesteeg was the driver. The prosecutor argued the length of time between the event and identification "is not dispositive."

The court denied the motion to suppress the identification. The court ruled the identification was "unnecessarily suggestive" but "even if an identification procedure is found to be suggestive, suppression is not required unless the suggestiveness results in a very substantial likelihood of misidentification."

The court addressed the five Biggers factors and ruled that Officer Bateman's identification was reliable and did not result in a substantial likelihood of misidentification.

The State called Magot Lewis, Detective Bateman, and AFIS latent fingerprint examiner Amanda Wilson to testify at trial. Vandesteeg did not testify. Dr. Loftus testified on behalf of the defense.

The jury found Vandesteeg guilty of possession of a stolen car and attempting to elude a pursuing police vehicle. The court imposed a 33-month sentence.

5

## ANALYSIS

Vandesteeg contends the court violated his right to due process by denying the motion to suppress Officer Bateman's out-of-court and in-court identification. U.S. CONST. amend. XIV; WASH. CONST. art I, § 3.

Findings of Fact and Conclusions of Law

Preliminarily, Vandesteeg contends the lack of CrR 3.6 written findings of fact and conclusions of law requires reversal or remand. Because the oral ruling is clear and comprehensive, we disagree.

When reviewing the court's denial of a CrR 3.6 suppression motion, we must determine whether substantial evidence supports the trial court's factual findings and whether those findings supports its conclusions of law. State v. Ross, 106 Wn. App. 876, 880, 26 P.3d 298 (2001). To facilitate review, CrR 3.6(b) requires the court to enter written findings and conclusions at the conclusion of the suppression hearing. A court's failure to enter written findings of fact and conclusions of law following a suppression hearing as required by CrR 3.6 is harmless if the oral opinion and the record of the hearing "are 'so clear and comprehensive that written findings would be a mere formality.' " State v. Smith, 76 Wn. App. 9, 16, 882 P.2d 190 (1994) (quoting State v. Smith, 68 Wn. App. 201, 208, 842 P.2d 494 (1992)).

Vandesteeg relies on State v. Head, 136 Wn.2d 619, 622-24, 964 P.2d 1187 (1998), to argue we must remand for entry of findings. In Head, the trial court did not enter findings and conclusions following a bench trial and the oral ruling did not "sufficiently address" each of the eight counts separately. Head, 136 Wn.2d at 621-23.

6

By contrast, here, the oral ruling clearly and comprehensively addressed each of the five Biggers factors.

Photographic Identification

We review a trial court's decision to admit identification evidence for abuse of discretion. State v. Kinard, 109 Wn. App. 428, 432, 36 P.3d 573 (2001). We will not disturb findings that are supported by substantial evidence. Kinard, 109 Wn. App. at 434. Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006). We review conclusions of law on the suppression of evidence de novo. Levy, 156 Wn.2d at 733. Unchallenged findings of fact are verities on appeal. Levy, 156 Wn.2d at 733.

Courts engage in a two-part analysis to determine whether the challenged identification is admissible. State v. Vickers, 148 Wn.2d 91, 118, 59 P.3d 58 (2002). To establish a due process violation, the defendant "bears the burden of showing that the identification procedure was impermissibly suggestive." Vickers, 148 Wn.2d at 118. If the defendant meets the burden of showing the identification procedure is impermissibly suggestive, the court considers whether the totality of the circumstances indicates that the identification was reliable. Biggers, 409 U.S. at 199. To determine whether the identification was reliable, the trial court considers the five factors set out in Biggers: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated at the identification, and (5) the time between the crime and the identification. Biggers, 409 U.S. at 199-200; Manson v.

7

Brathwaite, 432 U.S. 98, 114-16, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). The "linchpin" of eyewitness identification is "reliability." Brathwaite, 432 U.S. at 114. "An out-of-court photographic identification meets due process requirements if it is not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification." State v. Linares, 98 Wn. App. 397, 401, 989 P.2d 591 (1999).

Vandesteeg contends the identification was impermissibly suggestive because Officer Bateman knew that the fingerprints on the car matched Vandesteeg and looked at a single photo. The State does not contest the court's finding that the single-photo identification was impermissibly suggestive. See State v. Maupin, 63 Wn. App. 887, 896, 822 P.2d 355 (1992) ("The presentation of a single photograph is, as a matter of law, impermissibly suggestive.").

Vandesteeg challenges the court's analysis of the Biggers factors and the conclusion that Officer Bateman's identification was reliable and not so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.

### 1. Opportunity to View

Vandesteeg challenges the finding that Officer Bateman had an adequate opportunity to view the driver because the encounter was "fleeting and brief."

But in Brathwaite, an undercover police officer identified the defendant from a single photo. Brathwaite, 432 U.S. at 99, 101. The officer testified that he had purchased drugs from the defendant in the hallway outside an apartment. Brathwaite, 432 U.S. at 100. The officer stood at the apartment door for two to three minutes. Brathwaite, 432 U.S. at 114. The defendant opened the door twice to talk with the officer, take payment, and hand over the drugs. Brathwaite, 432 U.S. at 114. The

8

officer had moments to look directly at the seller. Brathwaite, 432 U.S. at 114. The Supreme Court concluded that the officer's opportunity to view was sufficient. Brathwaite, 432 U.S. at 114, 116.

Substantial evidence supports the trial court finding that Officer Bateman had "substantial and adequate opportunity to observe the driver of the stolen car." The record shows Officer Bateman spent "30 seconds to a minute" to look at the driver. Officer Bateman saw the driver "through his rearview mirror initially," "in profile as the Acura passed him," and when the driver was "facing straight at [Officer Bateman] with no obstructions at all" from 15 to 20 feet away. The driver ran toward Officer Bateman and "got within 10 to 15 feet of him before turning away." The driver also "stopped when he got to the fence and looked back at Officer Bateman before he then jumped the fence and essentially disappeared."

2. Degree of Attention

Substantial evidence supports the finding that Officer Bateman was "observing the other driver carefully" and that Officer Bateman was "paying close attention because he didn't have any idea why the other driver had refused to stop and tried to escape." Officer Bateman testified:

> I don't know why he's running at this point. The car didn't come back stolen, but the plates didn't match completely with the description that was associated to them, so . . . I suspect a potentially stolen car, but I don't know if he's armed. I don't know if he's got warrants, if he's wanted for something.

Officer Bateman described his "level of focus" as "very specifically looking at him to see who he is."

Vandesteeg argues Officer Bateman was also looking "to make sure there's nothing in his hands." But as in Brathwaite, Officer Bateman was a trained police officer on duty and not "a casual or passing observer." Brathwaite, 432 U.S. at 115. Although Officer Bateman's attention was not exclusively on the driver's face for the entire encounter, the record supports the court's finding that Officer Bateman was paying close attention.

### 3. Accuracy of Prior Description

Vandesteeg contends that Officer Bateman's description was not accurate because Vandesteeg is "noticeably taller and thinner than the driver of the Acura." Substantial evidence supports the finding that Officer Bateman described Vandesteeg accurately in his report.

The court found Officer Bateman described the driver as "a white male, unshaven, but not actually having a beard," and "maybe mid 20s." Officer Bateman's unrebutted testimony establishes the driver was a white male, late 20s to early 30s, with short brown hair. Officer Bateman testified that the driver was unshaven but did not have a beard and was wearing a blue T-shirt and "dirty jeans."

Vandesteeg contends that Officer Bateman's identification was unreliable because Vandesteeg's height and weight are different from the description. But the record shows Vandesteeg's weight was not firmly established. A May 24 police booking listed Vandesteeg's weight as 155 pounds but the Department of Licensing information listed his weight as 180 pounds. Officer Bateman described the driver as weighing between 160 and 180 pounds. The court found that Office Bateman was only "off a

couple of inches or so on the height." The record shows Officer Bateman described the driver's height as "five eight to five ten" and Vandesteeg is six feet tall.

Substantial evidence supports the court's finding that Officer Bateman accurately described Vandesteeg's "gender, race, and general build."

### 4. Certainty of Identification

Substantial evidence supports the court's finding that Officer Bateman was certain about the identification. Officer Bateman stated that he knew Vandesteeg was the driver "[t]he instant I saw the booking photo." Officer Bateman testified he was "100 percent" certain that Vandesteeg was the driver.

### 5. Length of Time

Vandesteeg contends the identification was unreliable because two months passed between the encounter and the identification.

The court found that Officer Bateman made the identification "seven or eight weeks after the time in question." The court concluded this was not an unreasonable length of time. We agree. In State v. Cook, 31 Wn. App. 165, 639 P.2d 863 (1982), we held that two months is not "an impermissibly long period" between an event and the identification. Cook, 31 Wn. App. at 173 (citing the seven-month delay between event and identification in Biggers).

In Brathwaite, the Court also weighed the reliability factors against the "corrupting effect of the suggestive identification itself." Brathwaite, 432 U.S. at 114-16. The Court concluded there was no coercive pressure on the witness to make a positive identification. Brathwaite, 432 U.S. at 116. The officer had the opportunity to view the

photo alone and at his leisure. <u>Brathwaite</u>, 432 U.S. at 116. The identification was made "in circumstances allowing care and reflection." <u>Brathwaite</u>, 432 U.S. at 116.

Here, as in <u>Brathwaite</u>, the trial court weighed the "corrupting effect of the suggestive identification procedure against the factors indicative of reliability." The court noted a "better practice would have been for the detective assigned to the case to prepare a photo montage for Officer Bateman to review without giving him any additional information." But the court found that Officer Bateman "was as concerned about ruling [Vandesteeg] out as a suspect as in making an identification. The case had been closed," and "there was no urgency" or motivation to identify a particular person.

Substantial evidence supports the court's findings and the conclusion that after weighing all the factors, Officer Bateman's identification was sufficiently reliable and there was no substantial likelihood of misidentification.

We affirm.

WE CONCUR: