IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78866-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ALFREDO LUNA, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 4, 2019 |
| | ) | |

SMITH, J. — In 2017, a jury found Alfredo Luna guilty of a felony violation of a no-contact order for knowingly contacting and assaulting his uncle. At sentencing, the trial court sentenced Luna to 41 months' imprisonment and imposed 12 months of community custody conditions. One condition required Luna to participate in a chemical dependency evaluation. Additionally, after finding that Luna was indigent, the trial court imposed a $100 Domestic Violence Penalty Assessment (DV penalty assessment) and a $15 domestic violence protection order violation fee (violation fee).

On appeal, Luna argues that the trial court erred by: (1) imposing the chemical dependency evaluation without finding that chemical dependency contributed to his offense; (2) imposing the $115 domestic violence fees on an indigent defendant; and (3) failing to enter written findings of fact and conclusions of law following a suppression hearing under CrR 3.5. Because the record

contains sufficient evidence that alcohol contributed to Luna's crime, we conclude the trial court properly imposed a chemical dependency evaluation. We further conclude that because the $15 violation fee was non-discretionary, the trial court did not err in imposing that fee. But we accept the State's concession that the DV penalty assessment was discretionary and should be stricken. Finally, because the findings of fact and conclusions of law for the CrR 3.5 suppression hearing are not material to this appeal and the findings have been entered, any error is harmless. Thus, we decline to remand for entry of findings. We affirm in part, reverse in part, and remand to the trial court to strike the $100 DV penalty assessment.

## BACKGROUND

On September 29, 2017, Skagit County Sheriff's Deputy Jesse Koback witnessed an altercation at a storage unit facility. As he began to leave, Deputy Koback heard yelling and saw Luna engaged in a physical altercation with Santos Luna-Miranda (Miranda). Deputy Koback testified he knew that Luna previously assaulted Miranda and believed a no-contact order was in effect. Deputy Koback thus detained Luna. Miranda told Deputy Koback—and a witness, Katherine Doherty, confirmed—that Luna began the altercation by throwing Miranda over a lawnmower. Luna explained to Deputy Koback that he confronted Miranda because he believed Miranda was dating Luna's girlfriend. Deputy Koback then confirmed that Luna was subject to a domestic violence

(DV) no-contact order prohibiting contact with Miranda. The State later charged Luna with felony violation of a no-contact order.

Prior to trial, Luna moved to suppress the statements he made to Deputy Koback at the time of his arrest. The trial court denied Luna's motion but did not enter findings of fact and conclusions of law following the CrR 3.5 hearing. During the hearing and at trial, Deputy Koback testified that Luna "obviously smelled of intoxicants and was obviously intoxicated." Luna testified at trial that he drank before the altercation, and additional testimony confirmed this.

A jury found Luna guilty of the crime of felony violation of a DV no-contact order based on assault under RCW 26.50.110. The jury also found that Luna committed the offense against a member of his household or family.

The trial court sentenced Luna to 41 months' imprisonment and imposed a chemical dependency evaluation as a condition of community custody. In addition, the court found that Luna was indigent. The court then imposed the $100 DV penalty assessment and the $15 violation fee. Luna appeals his sentence.

## DISCUSSION

*Chemical Dependency Evaluation*

Luna argues that the trial court erred by imposing a chemical dependency evaluation as a community custody condition without making an express finding that chemical dependency contributed to his offense. Because the record supports a finding that alcohol contributed to Luna's offense, we disagree.

A trial court's imposition of a community custody condition must be authorized by statute. State v. Kolesnik, 146 Wn. App. 790, 806, 192 P.3d 937 (2008). We review de novo whether the sentencing court had the statutory authority to impose a community custody condition. Kolesnik, 146 Wn. App. at 806. Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the sentencing court must find that the offender has a chemical dependency that "reasonably related to the circumstances of" the offense before requiring the offender to obtain a chemical dependency evaluation. RCW 9.94A.607(1). "If the court fails to make the required finding, it lacks statutory authority to impose the condition." State v. Warnock, 174 Wn. App. 608, 612, 299 P.3d 1173 (2013). Nonetheless, the court may impose a chemical dependency evaluation if the "record amply supports its decision," "[e]ven [when] the trial court failed to check the box indicating that [the defendant] had a chemical dependency." State v. Powell, 139 Wn. App. 808, 820, 162 P.3d 1180 (2007), rev'd on other grounds, 166 Wn.2d 73, 206 P.3d 321 (2009).

In Powell, Powell attempted to break into his ex-girlfriend's house. 139 Wn. App. at 811. At trial, the State presented testimony that Powell took methamphetamine prior to incident. Powell, 139 Wn. App. at 813. In addition, Powell, as well as the State, requested that the trial court impose chemical dependency treatment or evaluation. Powell, 139 Wn. App. at 820. The trial court did not check the box on the judgment and sentence form indicating that a chemical dependency contributed to Powell's offense, and Powell challenged the

4

chemical dependency treatment condition on that basis. Powell, 139 Wn. App. at 820-21. Division Two affirmed, concluding that "[e]ven though the trial court failed to check the box indicating that Powell had a chemical dependency, the record amply supports its decision." Powell, 139 Wn. App. at 820.

Here, as in Powell, the record amply supports the trial court's decision to impose a chemical dependency evaluation. Specifically, Luna testified that he drank prior to the assault. And Deputy Koback testified that Luna was "obviously intoxicated," that he could smell liquor on Luna, and that Luna had a "flushed face [and] watery eyes." Additionally, Luna's girlfriend testified that Luna had stopped using drugs but that "[h]e had a little issue with alcohol." Finally, while Luna—unlike the defendant in Powell—did not expressly request an evaluation, it appears from the record that he was amenable to—and in fact, desired— treatment. For these reasons, the trial court properly imposed the chemical dependency evaluation.

Luna disagrees and argues that the sentencing court erred because the court made no finding of chemical dependency before imposing the condition. Specifically, Luna points to the fact that, in the Felony Judgment and Sentence, the sentencing court did not check the box for a finding that "[t]he defendant has a chemical dependency that has contributed to the offense(s)." But, as discussed, reversal is not required where the record "amply supports" the imposition of the condition. Therefore, Luna's argument is not persuasive.

5

Luna next relies on Warnock and State v. Kinzle, 181 Wn. App. 774, 326 P.3d 870 (2014), to argue that imposition of a chemical dependency evaluation condition is improper when only alcohol, but not drugs, contributed to the offense. However, both Warnock and Kinzle were decided under a prior version of RCW 9.94A.607(1), which we determined required that the evaluation be limited to alcohol if there was no evidence that drugs contributed to the crime. Warnock, 174 Wn. App. at 614; Kinzle, 181 Wn. App. at 786. In 2015, the legislature amended that statute to allow a sentencing court to impose a chemical dependency evaluation when an offender has "*any* chemical dependency" and "regardless of the particular substance that contributed to the commission of the offense."[1] Because the amended version of RCW 9.94A.607(1) applies here, Warnock and Kinzle do not control.

### *Imposition of Fees*

Luna argues that the trial court erred when, after finding Luna indigent, it imposed the $100 DV penalty assessment and the $15 violation fee. The State concedes that imposition of the $100 DV penalty assessment was improper and should be stricken but maintains that the $15 violation fee is mandatory. We accept the State's concession with regard to the $100 DV penalty assessment and agree with the State that the $15 violation fee is mandatory and was properly imposed.

---

[1] H. PUBLIC SAFETY COMM., H.B. ANALYSIS ON S.B. 5104, 64th Leg., Reg. Sess. (Wash. 2015), https://app.leg.wa.gov/committeeschedules/Home/Documents/17042 (emphasis added).

House Bill 1783, 65th Leg., Reg. Sess. (Wash. 2018), amended RCW 10.01.160(3) to prohibit the imposition of discretionary legal financial obligations (LFOs) on indigent defendants. State v. Ramirez, 191 Wn.2d 732, 739, 426 P.3d 714 (2018); RCW 10.01.160(3) ("The court shall not order a defendant to pay costs if the defendant at the time of sentencing is indigent."). The amendments to RCW 10.01.160(3) apply prospectively to cases pending on appeal from judgment when House Bill 1783 was enacted. Ramirez, 191 Wn.2d at 747.

Here, the sentencing court found that Luna was indigent, and the State does not challenge this finding. Nonetheless, the trial court imposed a $100 DV penalty assessment under RCW 10.99.080 and a violation fee of $15; the latter of which is labeled "mandatory." The State concedes that the court improperly imposed the DV penalty assessment. Because the DV penalty assessment is discretionary, we accept the State's concession and remand to the sentencing court to strike the assessment. See RCW 10.99.080(1) (stating that the sentencing court "*may* impose" the DV penalty assessment) (emphasis added). However, the $15 violation fee is not discretionary because the sentencing court "shall" impose it. RCW 26.50.110(b)(ii). Thus, the fee is not subject to House Bill 1783's amendments under Ramirez, and the sentencing court did not err when it imposed the $15 violation fee.

*CrR 3.5 Findings of Facts and Conclusions of Law*

Luna contends that the trial court erred by failing to enter written findings of fact and conclusions of law following its CrR 3.5 hearing on Luna's motion to

suppress the statements he made to Deputy Koback. He contends further that this court must remand to the trial court to enter findings and conclusions. Because Luna's statements are not material to any of the sentencing issues raised in this appeal, we disagree.[2]

A trial court holds a CrR 3.5 hearing to review a motion to suppress a confession. CrR 3.5. CrR 3.5(c) requires the trial court to "set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor." A trial court errs when it fails to enter findings of fact and conclusions of law following a CrR 3.5 hearing. State v. France, 121 Wn. App. 394, 401, 88 P.3d 1003 (2004). But if the trial court's oral findings are sufficient for appellate review, the error is harmless. State v. Grogan, 147 Wn. App. 511, 516, 195 P.3d 1017 (2008).

Here, Luna's statements to Deputy Koback are not material to any of the sentencing issues that Luna raises on appeal. And Luna does not challenge any of the trial court's conclusions or findings of fact from the CrR 3.5 hearing. In other words, even if the trial court erred by not entering findings and conclusions following the CrR 3.5 hearing, that error is harmless, and remand is not necessary.

Luna disagrees, citing State v. Smith for the proposition that there is "a strong presumption that dismissal is the appropriate remedy" for a case "without

---

[2] Furthermore, the State entered and Luna's trial counsel approved the findings, which the State attached to its Brief on appeal.

the required findings." 68. Wn. App. 201, 211, 842 P.2d 494 (1992). But Smith is readily distinguishable. In Smith, the appellant challenged the propriety of a warrantless search and seizure, arguing that the trial court erred by failing to enter written findings following a CrR 3.6 hearing and then denying the appellant's motion to suppress evidence obtained during the search and seizure. Smith, 68 Wn. App. at 208. In other words, in Smith, the trial court failed to enter findings on an issue material to the appeal, i.e., whether the trial court erred by denying the suppression motion. 68 Wn. App. at 204. By contrast, and as discussed, the lack of findings in this case is not material to any of the sentencing issues raised in this appeal. Therefore, Luna's reliance on Smith is misplaced.

Luna's reliance on State v. Head is similarly misplaced. 136 Wn.2d 619, 964 P.2d 1187 (1998). There, the appellant challenged the sufficiency of the evidence supporting his conviction, following a bench trial, for eight counts of first degree theft. Head, 136 Wn.2d at 620. Because the trial court did not enter written findings or conclusions to support its verdict, our Supreme Court remanded to the trial court to do so. Head, 136 Wn.2d at 620-621. In short, remand was appropriate in Head because the absence of written findings and conclusions precluded effective review of the issue raised on appeal in that case, i.e., whether the evidence was sufficient to support the conviction. See Head, 136 Wn.2d at 624 ("An appellate court should not have to comb an oral ruling to determine whether appropriate 'findings' have been made, nor should a

defendant be forced to interpret an oral ruling in order to appeal his or her conviction."). But here, the absence of findings and conclusions does not preclude our review of any of the sentencing issues raised in Luna's appeal. Therefore, Head does not control.

We affirm in part, reverse in part, and remand to the trial court to strike the $100 DV penalty assessment.

_____ Smith, J.

WE CONCUR:

_____ Dwyer, J.

_____ Appelwick, C.J.